## Kelsey *versus* Tourtelotte.

A lease was prepared between the lessor and the lessee and his surety. The lessee signed it, took it away and brought it to the lessor with the surety's name to it, but it was not signed then by the lessor. Some days after the lessor signed it, neither of the other parties being present, it was not delivered to the lessee afterwards. The lessee did not take possession of the premises. The court charged that the lease was sufficiently proved, and was delivered to the lessee. *Held*, to be error.

October 20th 1868. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Erie county:* No. 7, to October and November Term 1868.

This was an action of covenant, commenced April 24th 1867, by Abraham Tourtelotte against M. P. Kelsey and Richard O'Brien. The claim was for one month's rent, under the lease hereafter mentioned, of premises belonging to the plaintiff. The plaintiff gave the following evidence by his witnesses :—

G. D. Buckley testified : "I witnessed the lease as to the signature of Kelsey; this is my signature; I signed it some days after; it was four or five days after Kelsey signed that I signed as a witness, at the instance of the plaintiff, and in the absence of the defendants; I saw Kelsey sign it; it was done in my office; was not asked then to sign it."

Edward Clark testified : "This lease was signed by me as agent for the plaintiff, and was signed by the defendants; was signed by Kelsey in my office; when the first month's rent was due I presented the lease to O'Brien and he admitted his signature to it, saying he would attend to it."

On cross-examination he said: "I drew the lease; Kelsey signed it, and then went out to bring in O'Brien to sign it, but came back, saying O'Brien could not come in. He then took the lease, went out and returned with O'Brien's signature to it, and immediately went out again saying he would go and get the $25 which he was to pay for James O'Brien, and bring it to me, and left the lease with me. The next day Kelsey called at my house to pay me $10. I declined to receive it. Two or three days

[Kelsey v. Tourtelotte.]

after the $25 was paid by James O'Brien and I signed the lease. Neither of defendants were present when I signed the lease. It was never delivered to them after I signed it, nor did they take possession of the house or pay any rent. O'Brien was surety. Kelsey was the lessee, who was required to give security, and he got O'Brien to sign it. Another person applied about the middle of the summer, and with the consent of defendant's attorney, I rented it to him, it being agreed that the rights of either party should not be affected by it."

He then gave in evidence the lease, dated March 30th 1867, between the plaintiff, by his attorney, E. Clark, and the defendants, for one year from the 1st of April 1867, for the rent of $524.58, in monthly payments of $43.72, the first payment to be made on the 10th of April.

The lease was signed :—

> "ABRAHAM TOURTELOTTE, [L. s.]
> by EDWARD CLARK, Atty.,  [L. s.]
>   M. P. KELSEY,          [L. s.]
>   R. O'BRIEN,            [L. s.]

Signed, sealed and delivered in
  presence of G. D. BUCKLEY,
    witness as to Kelsey."

The court (Johnson, P. J.), charged :—

"That the execution of the lease was sufficiently proved, that the contract belonged to the plaintiff and was delivered by Kelsey to him, and there was no understanding, so far as appears, that there was to be any redelivery of it or a duplicate to the defendant; and that it was no material alteration of the contract for a party, who had witnessed the signing of it, to attach his name thereto at the request of one party in the absence of the other; that although it might not be sufficient proof of its execution, in case of the absence or death of the witness, it would serve to identify the paper, the execution of which is sufficiently proven by the testimony of the witness, and that the not taking possession was the fault of the defendant, which he cannot allege as a reason for not paying the rent."

There was a verdict for the plaintiff for $45. The defendants took a writ of error, and assigned the charge for error.

*W. Benson*, for plaintiffs in error.—The signature of Buckley as a witness in the absence of the lessee would avoid the instrument: Marshall *v.* Gougler, 10 S. & R. 164; Henning *v.* Merkheiser, 8 Barr 518.

*J. R. Thompson* (with whom was *E. Clark*), for defendants in error.—The attestation of Buckley was not an alteration; it was

[Kelsey *v.* Tourtelotte.]

not necessary : 2 Bl. Com. 248, 249, note 20 ; Gardiner *v.* Sisk, 3 Barr 326 ; Trapp *v.* Spearman, 3 Esp. R. 57 ; Kershaw *v.* Coxe, 2 Id. 246 ; Getty *v.* Shearer, 8 Harris 16 ; Miller *v.* Reed, 3 Casey 244.

The opinion of the court was delivered, November 2d 1868, by AGNEW, J.—There being no bill of exception to the admission of the lease in evidence, the case rests upon the error assigned to the charge. It seems to us that the learned judge of the court below did not submit to the jury the question of fact whether the lease was finally executed between the parties. He told the jury that the lease was sufficiently proved, belonged to the plaintiff, was delivered by the defendant to him, and that there was no understanding that it or a duplicate was to be redelivered to the defendant. Had the question related to the *possession* of the paper, this might have been quite proper. But the real question presented by the testimony was, whether the lease was actually consummated between the parties.

Admitting that the plaintiff might desire to hold possession of the paper as his security for the performance of Kelsey, the principal defendant, yet the proof left it extremely doubtful, if indeed it did not fail to show, that the plaintiff had executed it with the knowledge and assent of Kelsey. When Kelsey brought it to the agent of the plaintiff the latter did not then execute it. There is no proof that Kelsey left it with the agent to be signed by him at his leisure, or upon any terms which would evidence that the paper was to be considered as the final contract of the parties.

All we know of it is, that several days after Kelsey brought it to the agent, the latter, in the absence of both Kelsey and O'Brien, signed it. There is no evidence that the agent gave Kelsey notice of his having finally executed the lease, or that Kelsey ratified it. On the contrary, the fact that Kelsey neither took possession under the lease, nor paid the rent, which was required by its terms to to be paid in advance, is evidence tending to show that he did not believe there had been a final execution of the contract by the plaintiff. Delivery, in its legal acceptation, was as necessary on part of the lessor, even though he should retain possession of the paper, as it was on part of the lessee ; yet it is clear that under the charge this question was not submitted to the jury.

The judgment is therefore reversed, and a *venire de novo* awarded.